IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| AARON ADDISON, | ) | CASE NO. 1:10 CV 2512 |
| | ) | |
| Petitioner, | ) | JUDGE JACK ZOUHARY |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| KEITH SMITH, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

## Introduction

Before me by referral[1] is the petition of Aaron Addison for a writ of habeas corpus under 42 U.S.C. § 2254.[2] Addison is currently incarcerated by the State of Ohio at the Toledo Correctional Institution, where he is serving a combined sentence of life without the possibility of parole, plus additional concurrent terms of 10 and 5 years, imposed in 2007 by the Cuyahoga County Court of Common Pleas following Addison's conviction by a jury of one count of aggravated murder, two counts of attempted murder, and one count of having a weapon while under disability.[3]

The State, in its return of the writ, argues that two of the four grounds for relief asserted in this petition should be dismissed as procedurally defaulted, one ground dismissed

---

[1] The matter was referred to me under Local Rule 72.2 by United States District Judge Jack Zouhary in a non-document order entered on December 30, 2010.

[2] ECF # 1.

[3] *Id.*

as a non-cognizable state-law claim, and the final ground should be denied on the merits.[4]

Addison, who filed the petition *pro se* but is now represented by counsel, filed a traverse,[5] to which the State filed a sur-reply.[6]

For the reasons that follow, I will recommend that this petition be dismissed in part and denied in part as set forth below.

## Facts

### A.    Underlying facts, conviction and sentence

The facts underlying the charges on which Addison was indicted are somewhat extensive and are here summarized from the 2008 decision of the Ohio appeals court[7] affirming Addison's conviction and sentence.[8]

On a Saturday night in August, 2006, co-defendant Reginald Wilmore went to the CMHA apartment of Latrice Cromwell to buy beer. Cromwell, along with her boyfriend, operated a "convenience store" out of her apartment, selling snack foods, soft drinks, and beer, as well as cocaine and marijuana. This night, Cromwell refused to sell beer to Wilmore

---

[4] ECF # 10.

[5] ECF # 16.

[6] ECF # 17.

[7] ECF # 10, Attachment (state court record)(decision of Ohio appeals court) at 232-37.

[8] Facts found by the state appeals court on its review of the record are presumed correct by the federal habeas court. 28 U.S.C. § 2254(e)(1); *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001).

because she did not know him. After a brief fight, Wilmore left, and Cromwell called the police.

Wilmore returned a short time later with two additional men. After some verbal "battling" between Cromwell and Wilmore, that group also left, but Wilmore later returned alone to apologize. In that discussion, Wilmore asked Cromwell to return a key he allegedly lost during the initial altercation. Cromwell refused, telling him she would give the key to police. Wilmore responded to Cromwell that "it's not over b****" and left a second time.

Hearing this, Cromwell became concerned and contacted her boyfriend and her cousin, and those men in turn called three other men. Leaving one of the men with Cromwell in her apartment, the other four men went out looking for Wilmore.

This group eventually came upon a small group of men that included Addison, but did not include Wilmore. When one member of the search group pointed a finger at Addison's group, shots were fired, although no one was hit. Cromwell's boyfriend returned to her apartment fearful that Addison and his friends were going to retaliate against them. Therefore, they all spent the next day – Sunday – at a different location.

By Sunday evening, Cromwell, her boyfriend, and her cousin had returned to the apartment, while Addison and Wilmore congregated near that apartment, each carrying shotguns. Addison then approached the front door of Cromwell's unit and told her to leave with her daughter and to send her boyfriend outside. After Cromwell told the two men in her apartment about the situation, she took her daughter and left the apartment, eventually hiding in a neighbor's closet.

At that point gunshots were heard coming from Cromwell's apartment. Latrice Cromwell's cousin, Charles Cromwell, was killed by a gunshot to the head, and her boyfriend, Charles Holder, was wounded when a bullet grazed his shoulder. Latrice Cromwell herself, alerted by the sounds of gunfire, testified that she observed Addison's purple convertible speeding away from the scene. A friend of Addison testified at trial that Addison appeared later that evening at a party and told him that "someone got shot."

Police recovered five shell casings from the same 9 mm weapon outside the apartment. No shotgun shells were recovered, but marks consistent with the effects of shotgun rounds were found in the outside screen door, on the brick wall surrounding the door, and in a wooden window frame. Forensic evidence showed that Cromwell's boyfriend, Charles Holder, had fired his weapon that night, but the coroner testified that the bullet that killed Charles Cromwell did not come from Holder's gun. Based on the trajectory of that bullet, the coroner could not rule out the possibility that Charles Cromwell had been killed by a shot fired from outside the apartment.

Testimony from police at trial[9] disclosed that Addison had given oral statements about the event at issue while in custody. First, Addison had told police that he was with friends the night before the shooting when Charles Holder "and his boys" "ran up" on Addison and his friends. Addison told police that one of the men with Holder asked Addison if he had a problem with Latrice Cromwell and then began shooting at them. Addison acknowledged going to Cromwell's apartment the next night to speak with her, but denied having a gun or

---

[9] A first trial in 2006 ended in a mistrial. ECF # 10, Attachment at 232.

shooting anyone. In his second statement, Addison stated that he had spoken with Wilmore in jail and that Wilmore had told him that a man named "Fiend" was the other shooter. Addison stated that Wilmore had the 9mm gun and that "Fiend" had a shotgun. After an investigation, a detective testified that he concluded that "Fiend" did not exist.

On October 30, 2007, the trial court sentenced Addison to life without the possibility of parole for his conviction on the charge of aggravated murder. In addition, Addison was sentenced to ten years in prison for attempted murder and to five years incarceration for having a weapon while under disability, such sentences to be served concurrently.

**B.     Direct appeal**

*1.     Ohio court of appeals*

Now represented by new counsel, Addison filed a timely[10] notice of appeal with the Ohio Eighth District Court of Appeals.[11] In his brief, Addison raised the following four assignments of error:[12]

1.     The evidence was insufficient to support the convictions for aggravated murder and attempted murder.

2.     The Appellant's convictions were against the manifest weight of the evidence.

---

[10] Ohio App. Rule 4(A) provides that, to be timely, an appeal must be filed within 30 days of the entry of the judgment being appealed. Here, Addison was sentenced on October 30, 2007, and the notice of appeal was filed on November 8, 2007.

[11] ECF # 10, Attachment at 123.

[12] *Id*. at 126.

3.      The Appellant was denied the effective assistance of counsel by the failure of defense counsel to request an instruction on the lesser offense of involuntary manslaughter.

4.      The trial court abused its discretion by sentencing Appellant to a term of life imprisonment without the possibility of parole on the charge of aggravated murder.

Addison then filed a supplemental brief with two additional assignments of error:[13]

5.      Whether the trial court erred and violated Appellant's rights under the Ohio and United States Constitutions in permitting the State to introduce inadmissible hearsay evidence.

6.      Whether the prosecutor committed misconduct when he introduced and argued inconsistent theories of culpability in Appellant's trial and the trial of his co-defendant, and otherwise engaged in improper argument, and whether trial counsel was ineffective in failing to object thereto.

The State filed a responsive brief addressing all six assignments of error,[14] to which Addison replied.[15] On February 2, 2009, the Ohio appeals court thereupon overruled all six of Addison's assignments of error, affirming the decisions of the trial court.[16]

## 2.      *Ohio Supreme Court*

Addison did not then perfect a timely appeal to the Supreme Court of Ohio.[17] Consequently, Addison, *pro se*, filed a notice of appeal and a motion for a delayed appeal in

---

[13] *Id*. at 167.

[14] *Id*. at 187-220.

[15] *Id*. at 222-229.

[16] *Id*. at 230-250.

[17] *See*, *id*. at 251-53.

the Supreme Court of Ohio,[18] which then granted the motion.[19] Addison then, *pro se*, filed a memorandum in support of jurisdiction setting forth the following three propositions of law:[20]

    1.    The trial court erred in failing to grant defendant's motion for acquittal, and [in] finding him guilty of aggravated murder and two counts of attempted murder when the evidence was not legally sufficient to support the jury verdict, in violation of the Appellant's Fifth and Fourteenth Amendment rights to the United States Constitution and Article 1, Section 10 of the Ohio Constitution.

    2.    The Appellant was denied the effective assistance of counsel in violation of his Sixth Amendment right [to counsel as stated in] the United States Constitution and Article 1, Section 10 of the Ohio Constitution when defense attorney failed to object to misconduct by the State wherein the prosecution introduced and argued inconsistent theories of culpability in the trials of the Appellant and his co-defendant, and later failed to request a lesser included offense of involuntary manslaughter as warranted.

    3.    The trial court erred in violation of Appellant's rights under the Ohio and United States Constitution[s] in permitting the State to introduce inadmissible hearsay evidence.

On November 4, 2009, the Supreme Court of Ohio denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.[21]

---

[18] *Id*. at 254-84.

[19] *Id*. at 285.

[20] *Id*. at 287.

[21] *Id*. at 325.

-7-

### 3. *Rule 26(B) application*

On April 20, 2009, while Addison's motion to appeal was pending before the Supreme Court of Ohio, Addison filed an application under Rule 26(B) with the Ohio appeals court to reopen his appeal on the basis of ineffective assistance of appellate counsel as set forth below:

> It constituted ineffective assistance of counsel when the trial counsel failed to secure the assistance of an expert, in violation of Defendant-Appellant's substantial rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Article 1 Section 10 of the Ohio Constitution.[22]

The State filed a memorandum in opposition to Addison's Rule 26(B) application.[23]

The Ohio appeals court then denied Addison's application to re-open the appeal.[24]

Addison, *pro se*, thereupon timely appealed that decision to the Supreme Court of Ohio,[25] raising the following proposition of law in his jurisdictional memorandum:

> Appelleant [sic] was denied the effective assistance of appellant [sic] counsel when counsel failed to present a geniune [sic] argument against trial counsel's failure to raise a legitimate claim of ineffective assistance in violation of appellant's sixth and fourteenth amendment [rights] of the [United States] constitution [and] article 1, sec. 10 of the Ohio Constitution.[26]

---

[22] *Id*. at 327.

[23] *Id*. at 339-46.

[24] *Id*. at 347-52.

[25] *Id*. at 353-55.

[26] *Id*. at 362.

The State waived the filing of a responsive brief,[27] and on September 30, 2009, the Ohio Supreme Court overruled Addison's assignment of error and dismissed his appeal as not involving any substantial constitutional question.[28] The record does not show that Addison then sought a writ of certiorari from the United States Supreme Court.

### 4.    *Federal habeas corpus petition*

Addison, *pro se*,[29] then timely filed the present petition for federal habeas relief[30] setting forth the following four grounds for relief:

Ground One:        Insufficient Evidence

Supporting Facts:   The State did not prove as required by law each and every element of the charged offense nor did it present sufficient evidence to support the jury's finding, and was wholly lacking in it's [sic] sufficiency as it relates to all additional charges in [sic] which petitioner was convicted.[31]

---

[27] *Id*. at 375.

[28] *Id*. at 376.

[29] Although the petition itself does not show that Addison was represented at the time it was filed (ECF # 1 at 7), Addison's traverse was signed by Paul A. Mancino, Jr. as counsel. *See*, ECF # 16 at 17.

[30] ECF # 1 at 7. This petition was signed by Addison on October 19, 2010, and docketed at this Court on November 3, 2010. 28 U.S.C. § 2254 states, *inter alia*, that a habeas petition must be filed within one year of the conclusion of direct review of the petitioner's claims by the state courts. In that regard, the one-year period does not begin to run until the day after a petition for a writ of certiorari would be due in the Supreme Court of the United States, or 90 days, regardless of whether such a writ was actually sought by the petitioner. *Bronaugh v. Ohio*, 235 F.3d 280, 283-84 (6th Cir. 2000). Thus, with the additional 90 days added to the one-year period from the conclusion of state review, Addison's petition is timely.

[31] ECF # 1 at 5.

Ground Two:  Ineffective Assistance of Counsel

Supporting Facts: Trial counsel failed to secure the assistance of an expert witness, who could have disproved the State's theory of how the crime was committed, as well as show that petitioner could not have commited [sic] the crime as alleged.[32]

Ground Three: Prosecutorial Misconduct

Supporting Facts: Prosecutor presented and raised inconsistent arguments in support of his theory's [sic] as to how the crime was commited [sic] and who was involved ... THEN LATER IN HIS BRIEF TO THE COURT OF APPEALS [8TH Dist. Ohio] [he] STATE[ed] THAT HE DOES NOT KNOW WHO KILLED THE VICTIM, BECAUSE HE WAS KILLED WITH A 9mm HANDGUN AND MY CO-DEFENDANT AND I WERE ACCUSED OF HAVING SHOTGUNS.[33]

Ground Four: Petitioner's Due Process rights were violated when the court allowed prejudicial and inadmissable hearsay at trial. (Hearsay).

Supporting Facts: The State presented perjured testimony from one of it's [sic] star witnesse's [sic] when testimony revealed that this witnesses [sic] statements were not only false but also contradicted by the evidence. Allowing this testimony deprived petitioner of his rights to confrontation.[34]

  The State in its return of the writ argues initially that ground two – ineffective assistance of trial counsel – is procedurally defaulted because Addison did not raise this issue

---

[32] *Id*.

[33] *Id*. at 6.

[34] *Id*.

on direct appeal, either in his arguments to the Ohio appeals court or in his memorandum in support of jurisdiction to the Ohio Supreme Court.[35] Next, the State maintains that ground three – prosecutorial misconduct – is also procedurally defaulted because the state appeals court was unable to review the claim due to Addison's failure to file the trial transcripts, with the appellate court noting that the proper forum for such a review was in a post-conviction motion, which Addison never brought, and Addison further never appealed those decisions to the Ohio Supreme Court.[36]

As to the two remaining claims, the State argues that ground one – sufficiency of the evidence – was decided against Addison by the Ohio appeals court which properly applied the *Jackson v. Virginia* standard, and thus this ground should be denied since that decision was not contrary to or an unreasonable application of clearly established federal law.[37] Likewise, the State contends that ground four – admission of alleged hearsay – should also be denied on the merits because the state court adjudication in this instance was also not contrary to or an unreasonable application of the clearly established federal law of *Crawford v. Washington*.[38]

---

[35] ECF # 10 at 17-23.

[36] *Id*. at 23-28.

[37] *Id*. at 33-42 (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)).

[38] *Id*. at 42-48 (citing *Crawford v. Washington*, 541 U.S. 36 (2004)).

As noted, Addison, now proceeding with the assistance of counsel, filed a traverse.[39]
The State then filed a sur-reply.[40]

# Analysis

## A.    Preliminary observations

Prior to addressing the grounds for relief and the arguments asserted by the State, I make the following preliminary observations:

1.    There is no dispute that Addison is currently in the custody of the State of Ohio under terms of the sentence imposed in 2007 by the Ohio trial court. Moreover, there is no dispute that Addison was so incarcerated at the time he filed the present petition for federal habeas relief. Thus, I recommend finding that Addison was "in custody" pursuant to the provisions of the federal statute vesting this Court with jurisdiction over the petition.[41]

2.    As discussed, there is no dispute that the present petition was timely filed.[42]

3.    In addition, subject to the State's arguments as concern Addison's alleged failure to properly raise the claim now presented in ground three, it appears that Addison has totally exhausted the grounds for relief advanced here by fairly presenting them through one full round of Ohio's established review procedure.[43]

---

[39] ECF # 16.

[40] ECF #17.

[41] 28 U.S.C. § 2254(a); *Ward v. Knoblock*, 738 F.2d 134, 138 (6th Cir. 1984).

[42] 28 U.S.C. § 2254(d)(1).

[43] 28 U.S.C. § 2254(b),(c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).

-12-

4.    Addison represents in the petition,[44] and my own review of this Court's docket confirms, that this is not a second or successive petition for habeas relief as to this conviction and sentence.[45]

5.    Finally, as noted previously, Addison is now represented by counsel and has not requested an evidentiary hearing.[46]

## B.    Standards of review

### 1.    *Procedural default*

Under the doctrine of procedural default, the federal habeas court is precluded from reviewing a claim for relief if the petitioner failed to obtain consideration of that claim on its merits in state court, either because the petitioner failed to raise it when state remedies were still available or due to some other violation of a state procedural rule.[47]

When a violation of a state procedural rule is alleged as the basis for the default, the Sixth Circuit has long-employed a four-part test to determine if the claim is procedurally defaulted in a federal habeas proceeding:

(1)    Does a state procedural rule exist that applies to the petitioner's claim?

(2)    Did the petitioner fail to comply with that rule?

(3)    Did the state court rely on that failure as the basis for its refusal to address the merits of the petitioner's claim?

---

[44] ECF # 1 at 7.

[45] *See*, 28 U.S.C. § 2244(b); *In re Smith*, 690 F.3d 809 (6th Cir. 2012).

[46] *See*, 28 U.S.C. § 2254(h).

[47] *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006).

(4)     Is the state rule violated by the petitioner an adequate and independent state law basis for barring the federal court from considering the claim?[48]

In addition to establishing these elements, the state procedural rule must be shown to be (a) firmly established and (b) regularly followed before the federal habeas court will decline to review an allegedly procedurally defaulted claim.[49]

If a procedural default is established, the default may be overcome if: (1) the petitioner can show cause for the default and actual prejudice from the court's failure to address the alleged constitutional violation, or (2) that a lack of review of the claims merits will result in a fundamental miscarriage of justice.[50] In addition, procedural default may also be excused by a showing of actual innocence.[51]

To establish "cause" for the default, a petitioner must generally show that some objective factor, something external to himself, precluded him from complying with the state procedural rule.[52] Demonstrating "prejudice" requires the petitioner to show that the alleged constitutional error worked to his actual and substantial disadvantage, infecting the entire

---

[48] *Morales v. Mitchell*, 507 F.3d 916, 937 (6th Cir. 2007) (citation omitted).

[49] *Smith v. Ohio Dep't of Rehab. & Corrs.*, 463 F.3d 426, 431 (6th Cir. 2006) (citations omitted).

[50] *Hicks v. Straub*, 377 F.3d 538, 552 (6th Cir. 2004) (citations omitted).

[51] *Id.*

[52] *Coleman v. Thompson*, 501 U.S. 722, 753 (1991).

proceeding with error of a constitutional dimension.[53] There can be no prejudice if the petitioner cannot show a reasonable probability of a different outcome at trial.[54]

Notwithstanding these elements, the Supreme Court has held that federal habeas courts are not required to consider an assertion of procedural default before deciding a claim against the petitioner on the merits.[55] In that regard, the Sixth Circuit has stated that a federal habeas court may bypass an issue of procedural default when that issue presents complicated questions of state law and addressing it is unnecessary to resolving the claim against the petitioner on the merits.[56]

## 2.    *AEDPA review*

Where a state court adjudicated the merits of a claim now asserted in a federal habeas petition, the controlling federal statute is plain that the federal habeas court may use that claim as a basis for granting the writ only if the state decision was either contrary to clearly established federal law as determined by the United States Supreme Court or was an unreasonable application of that law.[57]

---

[53] *United States v. Frady*, 456 U.S. 152, 170 (1982).

[54] *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003).

[55] *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).

[56] *Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003).

[57] 28 U.S.C. § 2254(d).

In applying that statute, a federal habeas court is guided by the well-known teachings of *Williams v. Taylor*.[58] As stated by the United States Supreme Court in *Williams*, a decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts."[59] *Williams* further holds that a state court decision is an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."[60]

Moreover, a federal court may not find that a state court unreasonably applied clearly established federal law simply because the habeas court "concludes on its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly."[61] Rather, the state court holding may be disturbed only upon showing that it was "objectively unreasonable."[62]

---

[58] *Williams v. Taylor*, 529 U.S. 362 (2000).

[59] *Id.* at 412. *Accord*, *Broom v. Mitchell*, 441 F.3d 392, 398 (6th Cir. 2006).

[60] *Williams*, 529 U.S. at 413; *Broom*, 441 F.3d at 398.

[61] *Williams*, 529 U.S. at 411.

[62] *Id*. at 409.

-16-

The Supreme Court teaches that this "objectively unreasonable" standard is "difficult to meet,"[63] and "highly deferential" to the decision of the state court.[64] As the Supreme Court explained, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."[65] Or, stated differently, a writ will issue only upon a showing that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."[66]

In addition, a state court may be found to have unreasonably applied clearly established federal law if it unreasonably extends or unreasonably fails to extend a clearly established federal legal principle to a new context.[67]

Finally, where a state court does not address the merits of a federal claim properly presented to it, "the deference due [a state court decision by the federal habeas court] under the AEDPA does not apply."[68] Then, the federal court is to review the claim *de novo*.[69]

---

[63] *Harrington v. Richter*, __ U.S.__, 131 S. Ct. 770, 786 (2011).

[64] *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

[65] *Harrington*, 131 S. Ct. at 786.

[66] *Id.* at 786-87.

[67] *Williams*, 529 U.S. at 405-07. *Accord*, *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

[68] *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003).

[69] *Id.*

However, as the Supreme Court emphasized in *Harrington v. Richter*, since a state court is not required to state its reasons or explain its conclusion when it adjudicates a federal claim in the merits, when a federal claim was presented to the state court and then denied without any statement of reasons or explanation for the decision, "it may be presumed that the state court adjudicated the [federal] claim on the merits in the absence of any indication or state-law procedural principles to the contrary."[70] In such circumstances, the decision of the state court would be entitled to deference from the federal habeas court.[71]

**C.  Applications of standards**

*1.    Ground one should be denied on the merits after AEDPA review because the decision of the Ohio appeals court on this matter was not an unreasonable application of the clearly established federal law of Jackson v. Virginia.*

In the first ground for relief, Addison in his petition contends that the prosecution did not present sufficient evidence to support his convictions for aggravated murder and attempted murder. In particular, he argues both in the petition and in the traverse, as he did in the Ohio appeals court, that there was no evidence that he even participated in the murder of Charles Cromwell or the attempted murders of Latrice Cromwell and Carlos Holder, let alone acted purposely in that regard. As he argued to the appeals court:

---

[70] *Harrington*, 131 S. Ct. at 784-85; *Brown v. Bobby*, 656 F.3d 325, 328-29 (6th Cir. 2011).

[71] *Brown*, 656 F.3d at 329.

-18-

[T]he evidence at trial merely showed that he went to Latrice [Cromwell's] apartment to warn her and then left the area, that no one witnessed him shoot a gun, and that Latrice [Cromwell's] testimony was inconsistent and contradicted by other State witnesses.[72]

In adjudicating this claim, the Ohio court initially set forth the clearly established federal law on sufficiency of the evidence, as that law is reflected in Ohio in the case of *State v. Thompson*.[73] Specifically, under that standard the relevant inquiry is whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.[74]

Then, after setting forth that the Ohio aggravated murder statute requires proof that the perpetrator acted "purposely" and with "prior calculation and design" to cause the death of the victim, the Ohio appellate court noted first that prior calculation and design can be found where the evidence shows sufficient time and opportunity to plan the crime, and the circumstances surrounding the homicide show there was a "scheme designed to implement the calculated decision" to kill.[75] In addition, the court noted that under Ohio law, criminal intent may be inferred from "the presence, companionship and conduct of the defendant before and after the offense is committed."[76]

---

[72] *See*, ECF # 10, Attachment at 239.

[73] *Id*. at 237-38 (citing *State v. Thompson*, 78 Ohio St. 3d 380, 678 N.E. 2d 541 (1997) (citing *Jackson*, 443 U.S. at 324)).

[74] *Id*.

[75] *Id*. at 238-39.

[76] *Id*. at 239-40 (citations omitted).

Therefore, applying these principles to the evidence in Addison's case, the appellate court found that a rational trier of fact could find that the State presented evidence, when viewed most favorably to the State, that established the essential elements of aggravated murder as applied to Addison.[77] In particular, the court stated that:

- Wilmore had engaged in a physical altercation with Latrice Cromwell;

- Cromwell's boyfriend, Carlos Holder, while looking for Wilmore, had an argument with Addison immediately after Cromwell's altercation with Wilmore that included firing of shots;

- Addison admitted to police that he was upset with being shot at by Holder;

- Addison also admitted meeting with Wilmore the night of the murder;

- Witnesses saw Addison, dressed similar to Wilmore, each holding guns and talking to each, with one of them being heard to say, "What is it we gonna do? She can get it too, let's make it happen;"

- Latrice Cromwell testified that Addison was holding a gun when he appeared at her door immediately before the murder to tell her to leave her apartment and to send Charles Holder outside; and,

- Witnesses heard both a shotgun and a 9mm being fired – weapons the police confirmed were used in the incident.[78]

These facts, the Ohio court determined, were sufficient for the jury to conclude, under the Ohio law cited above, that Addison had "criminal intent to carry out the shooting, and

---

[77] *Id*. at 240.

[78] *Id*. at 240-41.

-20-

therefore purposely, by prior calculation and design, [to] cause[] Charles [Cromwell's] death."[79]

This analysis was challenged by Addison in several ways both in the Ohio courts and in the traverse. Those challenges are addressed below.

First, as the State observes in its return of the writ, it is undoubtedly true that the evidence against Addison is largely circumstantial.[80] And the State further concedes that Latrice Cromwell had "credibility issues," chiefly arising from her desire to hide the fact that the "convenience store" operation in her apartment illegally sold drugs.[81] But the State also notes while that circumstantial evidence may be sufficient by itself to support a conviction, that evidence here was corroborated by testimony of witnesses as to key elements, as well as by Addison's own admissions.[82] In addition, the State relates that Latrice Cromwell's credibility was likewise reinforced by corroborating testimony from other witnesses.[83]

Next, Addison in his traverse seems to argue that the indictment was deficient and the jury instructions confusing, all related to an alleged change in the prosecution's theory of the case.[84] But, in its sur-reply the State maintains that these arguments are essentially new and

---

[79] *Id*. at 241.

[80] ECF # 10 at 40.

[81] *Id*. at 40-41.

[82] *Id*.

[83] *Id*.

[84] ECF # 16 at 2-6.

different from the argument advanced in support of ground one in the petition and in state court, and so are non-cognizable here on the basis that they have never been presented previously to an Ohio court.[85] On a review I recommend finding that the State's position is substantially correct, and that any arguments related in the traverse concerning deficiencies in the indictment and/or flaws in the instructions are newly asserted and so not properly before the Court.

In sum, and for the reasons given above, I recommend finding that ground one be denied on the merits because the decision of the Ohio appeals court concerning this claim was not an unreasonable application of the clearly established federal law of *Jackson v. Virginia*.

**2.      *Ground two should be dismissed as procedurally defaulted.***

In ground two, Addison contends that trial counsel was ineffective for not calling an expert witness to challenge the prosecution's theory of how the crime was committed and to show that Addison could not have committed the crime as alleged. The State maintains that this claim is, among other things, procedurally defaulted because Addison never properly raised it to an Ohio court.[86]

---

[85] ECF # 17 at 2-3 (citations omitted).

[86] ECF # 10 at 17-19. As the State observes, Addison originally argued to the appeals court in the direct appeal that his trial counsel was ineffective for not requesting a jury instruction as to the lesser included offense of involuntary manslaughter. ECF # 10 at 19. Addison in his Rule 26(B) application did argue that his appellate counsel was ineffective for not raising the argument that trial counsel was ineffective for not obtaining an expert witness. ECF # 17 at 19.

First, I note that the State correctly characterizes Addison's claim on direct appeal as not including the ground for relief asserted here. There, Addison claimed to the appeals court that trial counsel was ineffective for not requesting an instruction on involuntary manslaughter, not for the reason stated here in the petition.

I further note that even if Addison did indirectly raise a claim of ineffective assistance of trial counsel on the grounds asserted here when he argued in his Rule 26(B) application that his appellate counsel should have raised that alleged defect in trial counsel's representation on direct appeal, the State also correctly notes that a habeas petitioner cannot bootstrap a previously unmade claim of ineffective assistance of trial counsel onto a Rule 26(B) motion that deals with alleged ineffective assistance by appellate counsel.[87]

Moreover, I also note that Addison, in his traverse, returns to the ineffective assistance argument originally made in the appeals court – but not here in the petition – that trial counsel was ineffective for not requesting a jury instruction on involuntary manslaughter.[88] Again, only the claim made in the petition is properly before this Court.

In sum, I recommend finding that the State's analysis on procedural default is correct and that Addison has neither offered cause and prejudice to excuse that default, nor set forth a claim of actual innocence. Thus, under the rubric set forth above, I recommend that ground two be dismissed as procedurally defaulted.

---

[87] ECF # 10 at 20 (citing *Stojetz v. Ishee*, 389 F. Supp. 2d 858, 898-99 (S.D. Ohio 2005)).

[88] *See*, ECF # 18 at 7-8.

### 3. *Ground three should be dismissed as procedurally defaulted.*

In ground three Addison asserts that there was prosecutorial misconduct when the prosecution in his case introduced and argued inconsistent theories of how the murder of Charles Cromwell took place.

The State, in response, contends that this claim was never properly put before the Ohio courts in the form of a post-conviction petition, and so the Ohio appeals court was unable to rule on its merits.[89] Specifically, the appeals court observed that in order to prove misconduct, Addison would need to rely on evidence located on the transcript of his co-defendant's trial.[90] But because those transcripts were not part of the record of Addison's case on appeal, the appeals court could not consider them and so could not reach the merits of this claim.[91] The appeals court, however, indicated to Addison that the proper forum for such a review was at the trial court by way of a post-conviction petition, where evidence from the transcript of the co-defendant's trial would be permitted.[92]

Despite that guidance, Addison never filed a post-conviction petition. Thus, the State maintains that this claim may be technically unexhausted.[93]

---

[89] ECF # 10 at 23.

[90] *See*, *id*. (citing appeals court decision).

[91] *Id*.

[92] *Id*. at 23-24.

[93] *Id*.

That said, however, the State also maintains that this ground is procedurally defaulted because Addison never appealed the ruling of the appeals court – that it could not reach the merits of the claim – to the Supreme Court of Ohio, and has here failed to provide a cause and prejudice analysis to excuse the default.[94]

Addison in the traverse restates the claim and its supporting arguments on the merits but does not address either the assertion that this ground is unexhausted or that it is procedurally defaulted.

In considering the State's position, I note initially that despite the clear fact that Addison did not file a post-conviction petition, it is not clear that such an option now remains open to him. Ohio Revised Code § 2953.21 provides that a petition for post-conviction relief shall be filed no later than 180 days after the trial transcript is filed in the court of appeals. Section 2953.23 further provides that a later filing may be accepted if the petitioner can show both that he was unavoidably prevented from discovering a fact needed to present his claim and that, but for the alleged constitutional error, no reasonable fact finder would have found him guilty of the crime for which he was convicted.

In light of that applicable law, and mindful of the record here, I recommend finding that any technical lack of exhaustion here be excused because the option of a late, delayed motion for post-conviction relief would largely be an exercise in futility.[95]

---

[94] *Id*. at 26.

[95] *Turner v. Bagley*, 401 F.3d 718, 724 (6th Cir. 2005).

Therefore, the issue now is that of procedural default on the basis that Addison did not appeal the decision of the state appeals court on this ground to the Ohio Supreme Court. Again, Addison has advanced no cause and prejudice arguments to excuse the default, nor has he asserted actual innocence. Thus, applying the well-known procedural default rubric stated above to the facts here, I recommend dismissing ground three as procedurally defaulted.

**4.** ***Ground four should be denied on the merits after AEDPA review because the decision of the Ohio appeals court on this matter was not contrary to the clearly established federal law of Crawford v. Washington.***

In the fourth ground for relief Addison contends that he was denied due process and his right to confrontation when the trial court permitted the prosecution to introduce inadmissable hearsay.[96] Specifically, Addison argued that it was improper to allow a detective to testify that he heard from Addison's girlfriend that "Fiend" – a person Addison had told police was involved in the crime – did not exist.[97]

In adjudicating this claim, the Ohio appeals court first set out the law from two Ohio cases that statements given to explain an officer's conduct during an investigation, but not

---

[96] Addison's statement of supporting facts in the petition then goes on to argue that the prosecution presented perjured testimony from one witness that also denied him his right to confrontation. I note that this reference to perjured testimony is an expansion of the claim that was argued in Ohio courts that solely focused on the alleged hearsay. (*See*, ECF # 10, Attachment at 167 (brief on appeal); 287 (brief to Ohio Supreme Court)). Thus, the only claim that is properly before this Court by reason of going through one full round of Ohio's established review procedure on the same theory is that addressing the alleged hearsay.

[97] ECF # 10, Attachment at 248-49.

introduced for the truth of the matter asserted, are not hearsay.[98] The court then noted that the detective had testified that he spoke to Addison's girlfriend about "Fiend" after Addison had told police that they could find out "Fiend's" real name from his girlfriend.[99] The detective testified further that he then contacted Addison's girlfriend, who told him that she "has never, ever heard that name Fiend, doesn't know that person, never heard of that person."[100] As the appeals court stated, this testimony was not offered to establish the truth of whether Addison's girlfriend did or did not know "Fiend" but to show that police had followed up on Addison's lead about another suspect and to show why police proceeded no further in investigating "Fiend."[101] Thus, the Ohio appeals court overruled this assignment of error.[102]

In *Crawford*, the Supreme Court teaches that out-of-court statements that are testimonial in nature are barred by the Confrontation Clause. But *Crawford* further teaches that the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."[103] In that regard, the Sixth Circuit, post-*Crawford*, has concluded that the Confrontation Clause does not bar the use of out-of-

---

[98] *Id*. at 248 (citing *State v. Thomas*, 61 Ohio St. 2d 223, 232, 400 N.E.2d 401, 407-08 (1980); *State v. Blevins*, 36 Ohio App. 3d 147, 149, 521 N.E.2d 1105, 1108 (Ohio Ct. App. 1987).

[99] *Id*. at 248-49.

[100] *Id*. at 249.

[101] *Id*.

[102] *Id*.

[103] *Crawford*, 541 U.S. at 59 n.9.

court statements "offered for the limited purpose of explaining why a government investigation was undertaken."[104] Similarly, a district court in the Eastern District of Michigan – here directly applying *Crawford* – determined that "[e]vidence that is provided merely by way of background or is offered only to explain how certain events came to pass or why law enforcement officers took the actions they did is not offered for the truth of the matter asserted, and thus cannot trigger a Confrontation Clause violation."[105]

In this case, after reviewing the record and applicable law, I recommend finding that the decision the Ohio appeals court in denying this claim was not contrary to the clearly established federal law of *Crawford*. Thus, I recommend that ground four be denied on the merits.

## Conclusion

For the foregoing reasons, I recommend that the petition of Aaron Addison for a writ of habeas corpus be dismissed in part and denied in part as is more fully detailed above.

Dated: December 14, 2012                         s/ William H. Baughman, Jr.
                                                 United States Magistrate Judge

---

[104] *United States. v. Gibbs*, 506 F.3d 479, 486-87 (6th Cir. 2007) (quoting *United States v. Martin*, 897 F.2d 1368, 1371 (6th Cir. 1990)).

[105] *Coonrod v. Wolfenbarger*, No. Civ. 07-12844, 2010 WL 3463850, at *11 (citation omitted).

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[106]

---

[106] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).